UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

SALEEM SPENCER,

                        Petitioner,

      v.

                                    9:22-CV-0239
MARK ROCKWOOD, Superintendent of        (GTS)
Gouverneur Correctional Facility,

                        Respondent.

─────────────────────────────────

APPEARANCES:                         OF COUNSEL:

SALEEM SPENCER
Petitioner, pro se
16-B-2965
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. LETITIA JAMES                JALINA J. HUDSON, ESQ.
Attorney for Respondent             Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

GLENN T. SUDDABY
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

      Petitioner Saleem Spencer ("Petitioner") seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").  Respondent has opposed the petition and filed pertinent records from the state court proceedings.  Dkt. No. 20, Response; Dkt. No. 20-1, State Court Records ("SR"); Dkt. No. 20-2, Memorandum of Law in Opposition ("Resp. Mem."); Dkt. No. 26-1, Plea Transcript ("PT"); Dkt. No. 26-2, Sentencing Transcript ("ST").

Petitioner has also filed a reply.  Dkt. No. 22 ("Traverse").

For the reasons that follow, Petitioner's habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    Initial Criminal Proceedings

In July 2015, a confidential informant ("C.I.") purchased heroin from Petitioner on two occasions.  SR 180.  In October 2015, Petitioner was arrested pursuant to sealed Indictment No. 2015-147 (the "First Indictment"), which charged him with two counts of third-degree criminal sale of a controlled substance in violation of Penal Law § 220.39(1), two counts of third-degree criminal possession of a controlled substance in violation of Penal Law § 220.16(1), and two counts of seventh-degree criminal possession of a controlled substance in violation of Penal Law § 220.03.  SR 230-233.  Upon Petitioner's arrest, he was found in possession of 10.7 grams of cocaine packaged in 21 individual ziploc bags, digital scales, and $697 in cash.  SR 344.  As a result, a second indictment was issued – Indictment No. 2016-034 (the "Second Indictment") – which charged Petitioner with one count of third-degree criminal possession of a controlled substance in violation of Penal Law § 220.16(1), and one count of fourth-degree criminal possession of a controlled substance in violation of Penal Law § 220.09(1).  SR 229-230.

### B.    Pre-trial Matters

In December 2015, Petitioner's trial counsel filed a demand for discovery, a demand for a bill of particulars, and a pre-trial omnibus motion related to the First Indictment.  SR 152-156, 164-170, 182-186.  Among other things, the pre-trial motion sought dismissal or reduction of the charges and requested that Petitioner be allowed to enter a program of

judicial diversion for drug and alcohol treatment rather than face incarceration.  SR 165-170. The trial court granted this request and referred Petitioner to the judicial diversion program for drug treatment.  SR 264.

On March 16, 2016, Petitioner's counsel sent a letter to the trial court acknowledging that Petitioner had been on parole at the time of his arrest, and asked that the court consider sending Petitioner to inpatient rehabilitation at the Willard Drug Treatment Program before potentially starting the judicial diversion program, which would have allowed Petitioner to avoid jail time all together.  SR 242.  Petitioner's counsel acknowledged in the letter that if Petitioner did not succeed in the judicial diversion program, he would be facing an aggregate period of incarceration that could reach in excess of 10 years.  *Id.*

On March 22, 2016, the judge overseeing the judicial diversion program determined that Petitioner was not appropriate for the program.  SR 265.

On May 16, 2016, Petitioner's counsel filed a supplemental pre-trial motion in response to learning that the drug transactions that formed the basis of the First Indictment and Second Indictment involved a C.I. rather than an undercover police officer.  SR 175-178. The motion requested information about the C.I.'s criminal record and any consideration the C.I. was afforded in exchange for cooperation in Petitioner's case, and also sought suppression of the C.I.'s "confirmatory" photograph identification.  SR 175-178.

In May 2016, Petitioner's counsel filed another pre-trial omnibus motion related to the Second Indictment.  SR 208-213.  That motion sought, among other things, the dismissal or reduction of charges and the suppression of evidence.  SR 211-212.

On June 16, 2016, the trial court heard oral argument on the pre-trial motion related to the Second Indictment.  SR 239-240.  During the proceeding, Petitioner's counsel

3

acknowledged listening to a recording at the Cayuga County District Attorney's Office related to the drug sales charged in the First Indictment. SR 327. Nonetheless, Petitioner's counsel requested production of the recording, along with documentary evidence related to the C.I.'s criminal record and any consideration given to the C.I. for cooperating. *Id*.

At the conclusion of the hearing, the trial court directed the prosecution to turn over "recorded information" about the case, along with evidence related to the C.I.'s criminal record and any consideration given to the C.I. for cooperating, within 30 days. SR 327.

On July 18, 2016, Petitioner's counsel sent a follow-up letter to the prosecution requesting both the audio recording and relevant information about the C.I. SR 298.

### C.    Petitioner's Plea

On August 18, 2016, the parties appeared before the trial court for a pre-trial conference. *See generally*, PT. At the outset of the proceeding, the court acknowledged that the prosecution and Petitioner appeared close to reaching a plea agreement to satisfy both indictments. PT. 2-3. Specifically, the prosecution sought a 6-year determinate sentence, while Petitioner wanted a 5-year determinate sentence. PT. 2-3. The court indicated that, in an effort to resolve the matters, it would agree to sentence Petitioner to 5½ years in prison. PT. 3.

Initially, Petitioner's counsel asked the court for more time to discuss this arrangement with Petitioner, stating as follows: "[S]o if we could put this, put this over to next Thursday. I mean I do have trial next week, but I will go and see Mr. Spencer in the evening and see if we can get this done next Thursday morning, unless—or are you inclined to accept that now? It's a good offer." PT. 4. Petitioner responded to counsel by stating, "I'd take five and a half."

4

*Id*. Counsel then added, "I don't like to pressure people. It's not the way to do things. It's a good offer and we'll go ahead with it." *Id*.

The prosecutor noted that the charges had been pending since October 2015, and that the People did not wish for the case to be adjourned any further.  PT. 5.  The trial court then addressed Petitioner as follows: "Saleem, do you need more time to speak to [defense counsel?] Are you ready to proceed? I'm not going to adjourn it out for a week, but I'll give you a few more minutes to speak to your attorney." *Id*.

After a discussion off the record, counsel re-iterated Petitioner's desire to plead guilty in exchange for 5½ years' imprisonment.  PT. 5.  The trial court then directly asked Petitioner if he needed more time to consider the matter, to which Petitioner responded, "No, your Honor." *Id*.

The court then advised Petitioner of the consequences of pleading guilty, including that he would be giving up his right to remain silent and not incriminate himself.  PT. 6. Petitioner stated that he understood these consequences, after which the following colloquy between the court and Petitioner occurred:

| | |
|---|---|
| THE COURT: | All right. Saleem, I'm looking at Indictment 2016-147. Count 1 is criminal sale of controlled substance in the third degree, where it's alleged that on or about July 27 of 2015, here in the County of Cayuga, it's alleged that you knowingly and unlawfully sold a quantity of heroin, which as we all know is a narcotic drug, to another person. Is that correct? |
| [PETITIONER]: | Yes, your Honor. |
| THE COURT: | Saleem, tell me what happened on or about July 27 of 2015. |
| | (Discussion held off the record.) |

[PETITIONER]:        Your Honor, on that date, from the indictment, criminal sale of controlled substance did happen, your Honor.

THE COURT:        It did happen?

[PETITIONER]:        Yeah.

THE COURT:        All right. So you admit you were in possession of heroin?

[PETITIONER]:        Yes, your Honor.

THE COURT:        All right. And you admit that you did sell that heroin to another individual?

[PETITIONER]:        Yes, your Honor.

THE COURT:        Okay. You knew it was illegal to possess; you knew it was illegal to sell it?

[PETITIONER]:        Yes, your Honor.

THE COURT:        All right. Mr. Van Buskirk – Mr. --

[ASSISTANT DISTRICT ATTORNEY]:        I'm satisfied with the colloquy as well, Judge.

[PETITIONER'S COUNSEL]:        Yes, Judge. I'm satisfied.

THE COURT:        Sorry about that, gentlemen. Saleem, relative to Count 1 of criminal sale of controlled substance in the third degree, how do you wish to plead?

[PETITIONER]:        Plead guilty, your Honor.

THE COURT:        All right. I'm looking at Indictment 2016-034. Count 1, criminal possession of a controlled substance in the third degree, where it's alleged that on or about October 16 of 2015, here in the City of Auburn, it's alleged that you

6

|  | knowingly and unlawfully possessed 10.7 grams of cocaine, a narcotic drug, and that it was contained in 21 individual Ziploc bags and that you did so with the intent to sell it. Is that correct? |
|---|---|
| [PETITIONER]: | Yes, your Honor. |
| THE COURT: | All right. Saleem, once again, tell me what happened on or about October 16 of 2015 here within the City of Auburn. |
|  | (Discussion held off the record.) |
| [PETITIONER]: | On the day of October 16th, there was crack cocaine in my possession. |
| THE COURT: | All right. And you don't dispute that it was more than 10-grams? |
| [PETITIONER]: | I don't dispute. |
| [PETITIONER'S COUNSEL]: | You don't argue? |
| [PETITIONER]: | No, we don't argue, your Honor. |
| . . . |  |
| THE COURT: | Would you agree with me, though, there were 21 individual Ziploc bags? |
| [PETITIONER]: | Yes, your Honor. |
| THE COURT: | You did – so you had that in your possession with the intent to sell it, is that correct? |
| [PETITIONER]: | Yes, your Honor. |
| THE COURT: | All right. Mr. Budelmann? |
| [ASSISTANT DISTRICT ATTORNEY]: | Judge, I'm satisfied with the colloquy. |

| | |
|---|---|
| THE COURT: | Saleem, relative to Count 1 of criminal possession of a controlled substance in the third degree, how do you wish to plead? |
| [PETITIONER]: | Plead guilty, your Honor. |
| THE COURT: | All right. I want you to understand that by pleading guilty, you waive or forfeit certain rights. First, you waive any right you may have to a hearing to suppress evidence. Secondly, by pleading guilty, you waive your right to a trial by jury. At a trial by jury you're presumed to be innocent and you're entitled to the following rights: You have the right to be represented by your attorney. You have the right to confront and cross-examine witnesses presented by the People. You have the right to remain silent, not to incriminate yourself. . . . You have the right but are not required to call and present witnesses on your behalf and to testify in your own behalf if that's what you choose to do. And, finally, you have the right to require the People to prove your guilt beyond a reasonable doubt to a jury of 12 individuals who must be unanimous finding you guilty beyond a reasonable doubt. Do you understand those rights? |
| [PETITIONER]: | Yes, your Honor. |
| THE COURT: | Do you understand that by pleading guilty, you give up any defense you may have to these charges? |
| [PETITIONER]: | Yes, your Honor. |

PT. at 6-11.

Following this exchange, the trial judge spoke with the attorneys regarding post-release supervision, and then advised Petitioner that "under the law [he is] authorized to impose a maximum sentence of up to 12 years in prison on each count[,]" but "as [a]

condition of [Petitioner's] plea of guilty[,]" was promising him "a five-and-a-half-year prison sentence, followed by a period of post-release supervision of three years[,]" provided that Petitioner's presentence report did not reveal anything that would prevent the court from carrying out the agreed-upon sentence in good conscience.  PT. at 11.  The trial judge explained that if such a scenario were to occur, Petitioner would be allowed to withdraw his plea.  *Id*.  After Petitioner confirmed his understanding of these facts, the trial judge explained the meaning of post-release supervision to Petitioner, who confirmed his understanding of this as well.  *Id*. at 11-12.  Thereafter, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Saleem, other than the sentence promise which I placed on the record here this morning, has anyone made any other promises to you to have you plead guilty? |
| [PETITIONER]: | No, your Honor. |
| THE COURT: | Has anybody threatened you or forced you or pressured you in any way to plead guilty against your will? |
| [PETITIONER]: | No, your Honor. |
| THE COURT: | Have I said anything to you directly, or to your [sic] the best of your knowledge have I said anything to Mr. Van Buskirk to have you plead guilty against your will? |
| [PETITIONER]: | No, your Honor. |
| THE COURT: | Has Mr. Van Buskirk said anything to you to have you plead guilty against you[r] will? |
| [PETITIONER]: | No, your Honor. |
| THE COURT: | Are you satisfied with his services? |
| [PETITIONER]: | Yes, your Honor. |

> THE COURT:  Are you pleading guilty voluntarily and upon your own free will?
>
> [PETITIONER]:  Yes, your Honor.

PT. at 12-13.

Thereafter, Petitioner was given a second felony drug offender statement to reflect that he was previously convicted of third-degree criminal sale of a controlled substance in April 2012, and fifth-degree criminal sale of a controlled substance in January 2004.  PT. 13. Petitioner acknowledged his criminal history, and the court further advised Petitioner that his present guilty pleas could be the basis for additional or different punishment if he was ever again convicted of another crime, and Petitioner said he understood.  *Id*. at 13-14.  The court then adjourned the case for sentencing.  *Id*. at 14.

### D.    Petitioner's Letter to the Court

Prior to sentencing, Petitioner sent a letter to the court regarding his guilty plea.  SR 244.  The letter provided additional details about Petitioner's drug transactions, including that Petitioner knew the C.I. by name, and that he obtained heroin for her as a "favor[,]" without profiting from the "alleged buys[.]"  *Id*.  Petitioner claimed in the letter that he "only pled guilty because [he] was scared of trial and 5½ years sound [sic] a lot better than 36 years if [he] had to lose at trial[,]" and asked that the court "regress" back to the pre-trial phase so that his lawyer could confront the C.I.  *Id*.  Petitioner stated that he felt "scammed and framed" because the charges against him arose out of controlled buys made by someone he knew, and he was not a heroin dealer.  SR 245.  Petitioner also stated, with respect to the cocaine possession that formed the basis of the Second Indictment, that he "only pled guilty because [he] knew it was on [him] at the time of the arrest when the cops took it out of the shorts [he]

10

was wearing[,]" and the shorts were actually borrowed from a friend.  *Id*.  Petitioner then

stated that he did not provide the information in the letter sooner because "it seems like

every time I'm in court, I can't speak because my lawyer won't let me."  SR 246.

### E.    Petitioner's Sentencing

At sentencing in October 2016, the court acknowledged receiving Petitioner's letter,

which was attached to the pre-sentence report.  ST. at 2-3.  Defense counsel acknowledged

speaking to Petitioner that morning and noted that "he had not at that time indicated anything

about withdrawing his plea."  ST. at 2.  Defense counsel also noted that the letter did not

"change [Petitioner's] story necessarily, so much as enlarge it far beyond whatever is in the

plea allocution."  ST. at 3.  Petitioner agreed with his attorney, saying that he was

"comfortable with going forward," and did "not want to disrespect your offer at all your

Honor."  ST. at 4.  Petitioner conveyed that he wanted to air his side of the story at a hearing

where he could confront the C.I., but that he also did not want to lose the sentencing offer.

ST. at 3-4.  Petitioner opted to accept the sentencing offer, as long as he could appeal the

sentence and conviction.  ST. at 5-6.

The prosecution noted that Petitioner's letter was not a claim of innocence, and in fact

Petitioner admitted to being "in possession of a substantial quantity of cocaine, which is not

subject to any agency defense."  ST. at 6.  The prosecution said Petitioner's letter did not

sound like a motion to withdraw his plea, but that if the court was going to interpret it that

way, the People would oppose it and oppose its inclusion in the record.  ST. at 6-7.  The

prosecution further argued that Petitioner had committed at least 3 drug sale felonies within a

dozen years, and that the agency defense could not apply to someone with such a prolonged

criminal history of drug sales.  *Id*.  Specifically, the prosecution said that Petitioner had sold

drugs for most, if not all, of his adult life and that it was not credible that he was merely a "possessor that was conned into supplying drugs." *Id*.

The court then proceeded to impose the agreed-upon sentence. ST. at 12. Under the First Indictment, Petitioner was sentenced to a determinate term of 5½ years' imprisonment and 3 years of post-release supervision for third-degree criminal sale of a controlled substance. *Id*. at 12-13. Under the Second Indictment, Petitioner was sentenced to a determinate term of 5½ years' imprisonment and 3 years of post-release supervision for third-degree criminal possession of a controlled substance. *Id*. at 13.

Each sentence was imposed concurrently with the other. ST. at 13. Petitioner was also ordered to pay $200 in restitution of buy money, in addition to fees and surcharges. ST. at 13.

### F.    Petitioner's Motion to Set Aside His Sentence

In April 2017, four months after his sentencing, Petitioner filed a motion to set aside his sentence pursuant to C.P.L. § 440.20. The motion complained that the New York State Department of Corrections and Community Supervision ("DOCCS") was requiring Petitioner to serve the time owed on his April 2012 sentence, for which he was on parole at the time of his 2015 offenses, before he began serving his sentences for the 2015 offenses. SR 1-8. Petitioner said that his plea agreements for his 2015 crimes mentioned only that the two sentences for those crimes would run concurrently with each other, and that the court never specified how those sentences would run in relation to his prior sentences. SR 2.

The prosecution opposed the motion, SR 10-11, and Petitioner submitted a pro se reply in support of his motion, arguing, among other things, that his understanding at the time

he accepted the plea agreement was that he would be in prison for a maximum of 5½ years. SR 16-25.  The prosecution submitted a sur-reply to argue that DOCCS did not enhance or alter Petitioner's sentence, and that Petitioner's aggregate term of imprisonment was mandatory as a matter of law.  SR 26-29.

The court denied Petitioner's motion.  SR 31-32.  In doing so, the court addressed each of the arguments raised by Petitioner.  *Id*.

After the court denied Petitioner's motion, Petitioner submitted a "reply" to the prosecution's sur-reply.  SR 33-43.

Petitioner then applied to the Appellate Division, Fourth Department, for leave to appeal the denial of his motion.  SR 44-53.  The prosecution opposed Petitioner's leave application, arguing that his sentences were authorized by law and that he received his negotiated, agreed-upon sentence for the underlying offenses.  SR 103-104.

In December 2017, the Appellate Division denied Petitioner leave to appeal the denial of his motion.  SR 106.

### G.    Petitioner's Direct Appeal

On direct appeal, Petitioner argued through counsel that the trial court committed reversible error by denying Petitioner's request to withdraw the guilty plea without a hearing. SR 109, 118-19.  Petitioner also argued that his sentence was harsh and excessive because he had been struggling with drug addiction since 2003, and "there was no profit made on the sale," as he was merely "attempting to help a friend and . . . acting as the middleman."  SR 120-121.

In opposing the appeal, the prosecution argued that Petitioner's guilty plea was knowing, voluntary, and intelligent, and that the trial court properly exercised its discretion in

denying Petitioner's motion to withdraw, to the extent Petitioner's pre-sentencing letter could be construed as such.  SR 259, SR 270-272.  The prosecution further noted, with respect to Petitioner's sentence, that Petitioner was facing up to 36 years in prison had he gone to trial on all of the charges against him in the indictments, and that the plea agreement secured by Petitioner's counsel was therefore "highly favorable[.]"  SR 265, SR 273.

After the opposition brief was filed, Petitioner submitted a pro se supplemental brief arguing that he did not receive effective assistance of counsel because his trial attorney failed to investigate and advocate on his behalf, and because trial counsel failed to be adversarial with the prosecution.  SR 279.  Petitioner also raised agency and entrapment defenses and argued that the outcome of his case would have been different had his attorney obtained discovery material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *People v. Rosario*, 9 N.Y.2d 286 (1961), which would have corroborated Petitioner's version of events related to the heroin sale.  SR 282-285, 292.  Finally, Petitioner argued that the Second Indictment should have been dismissed because it was based on an illegal search, with the October 2015 drug seizure being the "fruit" of his entrapment by law enforcement officials.  SR 294.

The Appellate Division, Fourth Department, unanimously affirmed Petitioner's convictions under both indictments.  SR 301-303.  With respect to Petitioner's ineffective assistance claim, raised in his pro se supplemental brief, the Appellate Division found that the argument "survives [Petitioner's] guilty pleas only insofar as he demonstrates that the plea-bargaining process was infected by the allegedly ineffective assistance or that [Petitioner] entered the pleas because of his attorney's allegedly poor performance."  SR 301.  The appellate court also held that Petitioner's ineffective assistance arguments involved

14

matters outside of the record on appeal, and thus had to be raised by way of a C.P.L. § 440.10 motion, but lacked merit to the extent reviewable on direct appeal because Petitioner received "advantageous pleas" and "nothing in the record cast doubt on the effectiveness of counsel." SR 301-302.

The Appellate Division also rejected the arguments raised in Petitioner's principal brief, finding that the trial court afforded a reasonable opportunity to be heard concerning Petitioner's pre-sentencing letter and properly exercised its discretion in denying the motion to withdraw without an evidentiary hearing, to the extent Petitioner's letter could be construed as such. SR 302. The Appellate Division further found that Petitioner understood the consequences of his guilty pleas in exchange for a negotiated sentence that was less than the maximum term of imprisonment, and held that Petitioner's pleas were knowingly and voluntarily entered. *Id*. Finally, the Appellate Division found that the negotiated sentences were not unduly harsh or severe. *Id*.

### H. Petitioner's Motion to Vacate His Conviction

Following the affirmance of his judgments of conviction, Petitioner filed a motion to vacate his conviction pursuant to C.P.L. § 440.10. SR 304-323. Petitioner argued that his plea was not knowing and intelligent because of counsel's ineffectiveness, that he was improperly denied *Brady* and *Rosario* discovery material, and that he was prevented from raising an agency defense. SR 304, 305, 308.

Petitioner claimed that the trial court ordered the prosecution to turn over the recordings of the alleged heroin sales, the C.I.'s full criminal history, and information about the consideration the C.I. received in exchange for cooperating with law enforcement, and

this material was never received because trial counsel never "press[ed]" for it.  SR 309.

Petitioner further claimed that he specifically asked his attorney for the materials, to which his

attorney replied, "it doesn't matter your [sic] being offered a good deal just take it," and "if the

DA didn't come off the material by now he must not have to[ ]."  SR 309-310.

Petitioner argued that the result of his case would have been different if the discovery

material had been disclosed, and that his attorney did not "know the law" because he allowed

Petitioner to plead guilty to "non-existent" charges.  SR 311, 314.  Petitioner also argued that

law enforcement entrapped him, his cousin, and his brother, and that if it were not for this

entrapment, he would have never been arrested, searched, and charged with drug

possession in the second indictment.  SR 317-318.  Petitioner claimed the prosecution

failed to disclose discovery materials because the prosecution knew the C.I. was not a

reliable witness.  SR 318.  Finally, Petitioner argued that his criminal history had no bearing

on his agency defense because "every case is different and unique in its own way."  SR 310.

The prosecution opposed the motion and clarified the factual record through an

affirmation submitted by the Chief Assistant District Attorney of Cayuga County.  SR

324-335.  The affirmation asserted that Petitioner's trial counsel had, in fact, listened to

an audio recording of the drug sale from July 2015, and still sought to have the recording

"turned over" during a motion argument on June 16, 2016, along with information regarding

the C.I.'s criminal record and details of consideration offered to the informant.  SR 327.

The prosecution conceded that its files did not indicate that any of the information was

relayed to Petitioner's trial counsel, and that the assistant district attorney who was present at

the motion argument on June 16, 2016, and ordered to turn over the recording and C.I.

information was terminated on the same day as the motion argument.  SR 327.  However,

the prosecution argued that the purported failure to turn over this information was irrelevant because roughly two months after the motion argument, Petitioner knowingly and willingly pleaded guilty for a negotiated sentence well below the maximum sentence that could have been imposed.  SR 326, 328, 330.  The prosecution also noted that during the guilty plea, neither Petitioner nor his trial counsel mentioned anything concerning the audio recording or information about the C.I.  SR 328.  Furthermore, Petitioner's pre-sentencing letter to the trial court purportedly asking to withdraw his guilty plea failed to mention the lack of disclosure of recordings or information.  *Id*.

The prosecution separately addressed procedural deficiencies with Petitioner's arguments regarding *Brady* violations, and the lack of prejudice or ineffective assistance stemming from trial counsel's failure to obtain the *Brady* material or raise agency or entrapment defenses.  SR 329-335.

The trial court denied Petitioner's C.P.L. § 440.10 motion in its entirety, noting that Petitioner's allegations were "insufficient to demonstrate that the plea-bargaining process was infected" by the alleged deprivations raised in Petitioner's motion.  SR 341-344. Petitioner sought leave to appeal the denial of his motion, and the Appellate Division, Fourth Department, denied leave to appeal in May 2020.  SR 345-352.

## III.   THE PETITION, **RESPONSE, AND REPLY**

In his Petition, Petitioner raises the following three grounds for why he believes he is entitled to federal habeas relief: (1) his plea was involuntary because trial counsel was ineffective; (2) the First Indictment was the product of entrapment, and for which he had a viable agency defense, and the Second Indictment was based on "Fruit of Poisonous Tree";

and (3) his sentence was harsh and excessive.  Pet. at 6-11.

Respondent argues that the Petition should be dismissed because (1) Petitioner's ineffectiveness claim is barred by his guilty pleas, and the state court reasonably determined that he received effective assistance, (2) his claims concerning potential defenses are waived by his guilty pleas, barred from federal habeas review, and meritless, and (3) his sentence is within the limits of New York law.  Resp. Mem. at 25-42.

In his reply, which is comprised of a three-page letter and attached case law, Petitioner contends that he was not provided with *Brady* material because of "prosecutorial misconduct[,]" and "conned and swayed" into accepting a guilty plea because his trial counsel "was working with the DA in a private sector[.]"  Traverse at 2.[1]  Petitioner further argues that his rights were violated when the trial judge improperly refused to allow him to "take [his] plea back[.]"  *Id*. at 3.

## IV.    DISCUSSION

### A.    Exhaustion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii).  "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and

---

[1] Insofar as Petitioner contends that the prosecution engaged in misconduct by intentionally withholding *Brady* material and his trial counsel was ineffective based on a conflict of interest related to a relationship with an assistant district attorney, there is no evidence in the record related to these matters.  In any event, the Court will address these arguments more fully below.

prevent disruption of state judicial proceedings[.]'" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Fama v. Comm'r. of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000).  In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of his or her claims.  *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. 9:03-CV-1377 (DNH/GJD), 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007).  "[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Liberally considering all of Petitioner's arguments made throughout the totality of his submissions, Petitioner's conclusory allegations in his Traverse – that his trial counsel had a conflict of interest based on a personal relationship with an assistant district attorney and the

prosecution's failure to produce *Brady* material amounted to prosecutorial misconduct – are unexhausted.  This is because neither argument was ever asserted in the state courts.[2]  *See* SR 1-8, 109-122, 278-300; *see also Cano v. Walsh*, 170 Fed. App'x 749, 750 (2d Cir. 2006) ("The claim was not properly presented to the courts of New York because the petitioner never sought leave to appeal to the New York Court of Appeals the decision of the Appellate Division[.]") (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)); *see also Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) ("Until [petitioner] presents his claim to the highest state court – whether or not it seems likely that he will be held to be procedurally barred – he has not exhausted available state procedures.").

Both claims also appear to be based on matters outside the record.[3]  Thus, it appears these claims are appropriate for review in a CPL § 440.10 motion.  *See People v. Pinto*, 133 A.D.3d 787, 790 (2d Dep't 2015) (where petitioner's claims involve matters both on and off the record, the proper procedural vehicle is a motion pursuant to CPL § 440.10); *People v. Maxwell*, 89 A.D.3d 1108, 1109 (2d Dep't 2011) ("[W]here . . . a defendant presents a mixed claim of ineffective assistance that depends, in part, upon matters that do not appear on the record, it cannot be said that 'sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal'

---

[2] Although Petitioner's appeal from the judgment of conviction was based in part on trial counsel's ineffective representation, the articulated reasons for trial counsel's ineffectiveness do not include a conflict of interest.  *See* SR 278-300.  In addition, neither Petitioner's appeal nor his 440 Motion included a claim that trial counsel was unable to represent Petitioner due to a conflict of interest.

[3] Petitioner contends that his trial counsel had a personal relationship with one of the assistant district attorneys involved in Petitioner's case.  *See* Traverse at 2.  Petitioner also argues that the outcome of his case "would have been different" if the *Brady* material was produced, and implies that it was withheld for malicious reasons.  *Id*. at 1-2.  However, the State Court Record does not include the *Brady* information sought by Petitioner, or documentary evidence related to (1) the prosecution's motives for not producing this material, or (2) a relationship between Petitioner's trial counsel and an assistant district attorney.  Therefore, any such documents remain outside of the record presented to the state courts.

(CPL 440.10 [2] [b]).  Therefore, such a mixed claim, presented in a CPL 440.10 motion, is not procedurally barred, and the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety[.]"); *cf. Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 353 (N.D.N.Y. 2013) (explaining that where a petitioner has already used his or her direct appeal, "collateral review of . . . record-based claims is also foreclosed.") (citing N.Y. Crim. Pro. Law § 440.10(2)(c)).  Accordingly, the Court has no reason to conclude that remedies are no longer available to Petitioner in state court with respect to these claims.

However, under the AEDPA, a federal habeas court may still deny a claim on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  The AEDPA "does not articulate a standard for denying a petition pursuant to Section 2254(b)(2), and neither the Supreme Court nor the Second Circuit has established one." *Nickels v. Conway*, No. 10-CV-0413, 2015 WL 4478970, at *18 (W.D.N.Y. July 22, 2015) (noting that "[i]n this Circuit, the various formulations for the proper standard to be used share 'the common thread of disposing of unexhausted claims that are unquestionably meritless'" (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)), *certificate of appealability denied* (2d Cir. Dec. 29, 2015).  Rather, the Supreme Court has made clear that district courts can "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, *see* § 2254(a)." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).  Thus, unexhausted claims found to be meritless on de novo review may be dismissed on the merits.  *See, e.g., DeVault v. Griffin*, No. 16-CV-7281, 2020 WL 5209731, at *2 (S.D.N.Y., Aug. 31, 2020) ("[A] petitioner's unexhausted

claims can be denied on their merits under a de novo standard of review." (citing 28 U.S.C. § 2254(b)(2) and *Berghuis*, 560 U.S. at 390)).

### 1. Conflict of Interest Claim

As an initial matter, Petitioner does not identify the assistant district attorney with whom his trial counsel allegedly had a personal relationship, nor does he support his claim with any record evidence.  However, even if the Court were willing to assume that Petitioner is referring to the assistant district attorney who was ordered to produce *Brady* material on June 16, 2016, this official was terminated on this same date, and Petitioner's trial counsel subsequently sent a letter to the newly assigned assistant district attorney seeking this information.  SR 298, SR 327.  In other words, the claim is entirely meritless.

Furthermore, the claim that trial counsel was incapable of representing Petitioner effectively based on a conflict of interest has nothing to do with the voluntariness of Petitioner's plea, and it is "well settled that a guilty plea represents a break in the chain of events which has preceded it in the criminal process and [a petitioner] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Williams v. Gonyea*, No. 9:16-CV-0460 (JKS), 2017 WL 4990645, at *5 (N.D.N.Y. Oct. 31, 2017) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).  Thus, the claim is barred under *Tollett*.  *See Coward v. Bradt*, No. 9:11-CV-1362 (LEK/CFH), 2013 WL 6195751, at *15 (N.D.N.Y. Nov. 27, 2013) ("Coward's grounds for the ineffective claim, that counsel had a conflict of interest and also failed to move to dismiss the indictment, do not relate to the voluntariness of Coward's plea and are barred by *Tollett*." (citing *Canal v. Donelli*, No. 06-CV-1490, 2008 WL 4287385, at *3 (N.D.N.Y. 2008)).

Finally, Petitioner has also failed to establish that he suffered any prejudice as a result

22

of any perceived conflict of interest.  *See Premo*, 562 U.S. at 121-22 (noting that petitioner "must show both deficient performance by counsel and prejudice" to succeed on an ineffectiveness claim).  For these reasons, Petitioner's ineffective assistance claim based on trial counsel's alleged conflict of interest is meritless.

### 2.  Petitioner's Challenge to the Prosecution's Disclosures

"To establish a *Brady* violation, a petitioner must show that (1) the undisclosed evidence was favorable to him; (2) the evidence was in the state's possession and was suppressed, even if inadvertently; and (3) the defendant was prejudiced as a result of the failure to disclose."  *Mack v. Conway*, 476 Fed. App'x. 873, 876 (2d Cir. 2012) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief."  *Flynn v. Colvin*, No. 9:13-CV-1247 (JKS), 2016 WL 7053582, at *6 (N.D.N.Y. Dec. 5, 2016) (citing *Skeete v. New York*, No. 1:03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.")).

In this case, Petitioner has failed to explain how the materials that were not produced establish that he was innocent of the crime to which he pled guilty.  Thus, even if the Court were to assume that exculpatory evidence should have been disclosed prior to the entry of a guilty plea,[4] Petitioner's argument that the prosecution failed to turn over such evidence is

---

[4] *See Gathers v. New York*, No. 11-CV-1684, 2012 WL 71844, at *9 (E.D.N.Y. Jan. 10, 2012) ("[T]he law is unsettled as to whether such evidence must be disclosed prior to entry of a guilty plea."); *Porath v. Miller*, No. 9:15-CV-0091 (JKS), 2016 WL 3172872, at *4 (N.D.N.Y. June 6, 2016) ("[T]he Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea.").

insufficient to establish a *Brady* claim in this case.  *See Flynn*, 2016 WL 7053582, at *6 ("Flynn alleges that he was lied to about the length and content of the tape recording of the incident and was not given a police incident report. But Flynn provides nothing more than his unsupported assertions in support of this claim."); *Gathers*, 2012 WL 71844, at *9 ("[Petitioner's] conclusory assertion that the government failed to turn over evidence proving his innocence is insufficient to establish a *Brady* claim." (collecting cases)); *see also Strickler*, 527 U.S. at 281-82 (noting that "prejudice" is a necessary component of a *Brady* claim).

Accordingly, Petitioner's claim that the prosecution violated his due process rights by failing to disclose favorable evidence is meritless.

**B.      Standard of Review Governing Exhausted Claims**

As noted, the Petition also raises the following three grounds for why Petitioner believes he is entitled to federal habeas relief: (1) his plea was involuntary because trial counsel was ineffective; (2) the First Indictment was the product of entrapment, and for which he had a viable agency defense, and the Second Indictment was based on "Fruit of Poisonous Tree"; and (3) his sentence was harsh and excessive.  Pet. at 6-11.  These three claims are all properly exhausted.

Under the AEDPA, a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-81, 185 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v.*

24

*Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-509 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'"  *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct

unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

### A.    Petitioner's Challenge to Representation by Trial Counsel

Liberally construed, the Petition raises multiple claims related to his trial counsel's representation.  First, Petitioner alleges that counsel failed to (a) "press" for *Brady* material that was not disclosed and (b) investigate potential defenses.  *See* Pet. at 6.  Second, Petitioner alleges that trial counsel coerced him into pleading guilty.  *Id*.

### 1. Legal Standard Governing Ineffectiveness Claims

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, "a reasonable probability" exists that the result of the proceedings would have been different such that the petitioner suffered prejudice.  *Premo*, 562 U.S. at 121-22 (noting that petitioner "must show both deficient performance by counsel and prejudice") (citation and internal quotation marks omitted); *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  The standard "must be applied with scrupulous care" in habeas proceedings because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122.  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted).  To

26

establish a deficient performance by counsel, a petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Demonstrating constitutionally ineffective assistance of counsel is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted); *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (noting that "AEDPA erects a formidable barrier" to federal habeas review of claims that have been adjudicated in state court). When reviewing a state court's decision under section 2254, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 2. Failure to Pursue *Brady* Material and Investigate Potential Defenses

Insofar as Petitioner's ineffectiveness claim is based on trial counsel's failure to pursue *Brady* material and investigate potential defenses, as noted, "the *Tollett* bar . . . applies to 'ineffective assistance claims relating to events prior to the guilty plea.'" *Ture v.*

*Racette*, No. 9:12-CV-1864 (JKS), 2014 WL 2895439 at *9 (N.D.N.Y. June 26, 2014) (citation omitted); *James v. Smith*, No. 9:12-CV-0857 (FJS/ATB), 2013 WL 4519773 at *8-9 (N.D.N.Y. Aug. 26, 2013) ("Petitioner's arguments that trial counsel was ineffective in pre-plea representation, e.g., by not conducting further investigation into whether the victim suffered 'physical injury' was an antecedent claim not affecting the voluntariness of his guilty plea. Such claims are effectively barred from consideration in a habeas proceeding by *Tollett*[.]"). Moreover, Petitioner's trial attorney's alleged failure to pursue *Brady* material and investigate potential defenses has nothing to do with the voluntariness of Petitioner's plea.  Thus, Petitioner's request for habeas review of his ineffectiveness claim on these grounds is barred under *Tollett*.

Furthermore, even if Petitioner's guilty plea did not bar habeas review, the Appellate Division rejected this ineffective assistance of trial counsel claim on the merits.  SR 301-03. Thus, the relevant inquiry for this Court is whether or not the Appellate Division's determination under the *Strickland* standard was unreasonable.

In addressing the reasonableness of the Appellate Division's determination, the Court begins by noting that the entrapment, agency, and "fruit of the poisonous tree" defenses that Petitioner believes his trial counsel failed to investigate are meritless.

With respect to an entrapment defense, a defendant must present "some credible evidence" of (1) "government inducement of the crime," and (2) "a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *United States v. Cabrera*, 13 F.4th 140, 146-47 (2d Cir. 2021).  "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so."  *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995)

(quoting *United States v. Harvey*, 991 F.2d 981, 992 (2d Cir. 1993)).  Predisposition may be shown by evidence of "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Salerno*, 66 F.3d at 548 (quoting *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980)).

Similarly, the agency defense permits individuals to avoid charges for selling drugs, as opposed to possessing them, "where the defendant's mere delivery of the drugs does not appear to involve the same degree of culpability, or warrant the extreme penalties, associated with pushing drugs[,]" *People v. Lam Lek Chong*, 45 N.Y.2d 64, 72 (1978), but this defense requires consideration regarding "whether the defendant has had other drug dealings with this or other buyers or sellers." *Id*. at 75.

In this case, Petitioner admittedly sold heroin to a C.I. in July 2015.  PT. at 6-11.  Before then, he had also been convicted on two separate occasions of selling drugs.  SR 140-41.  In addition, only a few months after these sales, Petitioner was arrested for possession of 10.7 grams of cocaine packaged in 21 individual ziploc bags, along with cash and digital scales.  SR 328, 344.  Based on these facts, it is unclear how a rational jury could conclude that Petitioner had no predisposition to selling drugs at the time of his sales to the C.I.  *See, e.g., Dones v. United States*, No. 08-CV-926, 2010 WL 184451, at *6 (S.D.N.Y. Jan. 19, 2010) ("[I]n light of petitioner's prior drug convictions, it would have been equally difficult to persuade a jury that he was not predisposed to trafficking in narcotics.").  In other words, there is no basis for concluding that trial counsel acted objectively unreasonable by not recommending that Petitioner pursue his entrapment and/or agency defenses at trial.

In addition, Petitioner's "fruit of the poisonous tree" argument is based on the premise that he would have succeeded on having the First Indictment dismissed under his entrapment or agency defenses, which would have eliminated the probable cause for searching his property and finding the drugs that formed the basis of the Second Indictment. *See* Pet. at 8-9.  However, as noted above, it was not objectively unreasonable for trial counsel to doubt Petitioner's ability to succeed on entrapment and/or agency defenses if pursued at trial, which would have been fatal to his "fruit of the poisonous tree" defense.  *See Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) ("[A] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." (quoting *DeLuca v. Lord*, 77 F.3d 578, 588 n. 3 (2d Cir. 1996))); *Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) ("The likelihood that an affirmative defense will be successful at trial and an assessment of the probable increase or reduction in sentence relative to the plea if the defendant proceeds to trial are clearly relevant to the determination of whether an attorney acted competently in recommending a plea.").

Moreover, with respect to Petitioner's argument that trial counsel should have pursued discovery material more aggressively, the record shows that trial counsel filed a pre-trial motion requesting information about the C.I.'s criminal record and any consideration the C.I. was afforded in exchange for cooperation in Petitioner's case, and followed up regarding the lack of production of this material two days after the expiration of the deadline set by the trial court for the assistant district attorney to produce it.  SR 175-178, 298, 327.  Petitioner entered his guilty plea one month later, and there is no evidence in the record that Petitioner's trial counsel would have abandoned his request for this material (or not pursued

all plausible defenses at trial) had Petitioner not pled guilty.  Additionally, Petitioner's trial counsel had already listened to the recordings related to the alleged heroin sales to the C.I. leading up to Petitioner's guilty plea, the additional information that trial counsel sought – the physical recordings of the alleged heroin sales and information about to the C.I. – related only to the charges in the First Indictment, and Petitioner's plea deal was for roughly half of the prison time that he could have been ordered to serve if found guilty of the charges in only the Second Indictment.

In light of the foregoing, Petitioner has failed to satisfy his burden of showing that trial counsel's performance fell below an objective standard of professional reasonableness.  *See also Seifert v. Keane*, 74 F. Supp. 2d 199, 206 (E.D.N.Y. 1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd*, 205 F.3d 1324 (2d Cir. 2000).

Because Petitioner has failed to establish that his trial counsel's performance was constitutionally deficient, the Court need not reach the question of whether Petitioner was prejudiced by trial counsel's efforts related to pursuing discovery and potential defenses. However, for the sake of completeness, the Court notes that Petitioner has also failed to provide any credible explanation for why he believes he likely would have been acquitted at trial on all charges in both indictments, or received a more favorable sentence, had he not pled guilty.  *See Belle v. Superintendent*, No. 9:11-CV-0657 (NAM), 2013 WL 992663, at *12 (N.D.N.Y. Mar. 13, 2013) ("In the context of a guilty plea, [in order to establish prejudice,] the [petitioner] must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence."

(citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985)).  Furthermore, as noted, the defenses he allegedly wanted to pursue are all entirely meritless.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."); *Jimenez v. United States*, No. 10-CR-316, 2015 WL 5098075, at *6 (S.D.N.Y. Aug. 31, 2015) (noting that because "it is unlikely that Jimenez would have been entitled to a jury instruction on entrapment, let alone that he would have succeeded on an entrapment defense at trial[,] . . . Jimenez's counsel did not provide ineffective assistance of counsel by failing to discover and assert an entrapment defense in order to get the indictment dismissed or during plea negotiations, or by failing to inform Jimenez of the same when recommending that he plead guilty").  Thus, Petitioner has also failed to show that he was prejudiced by trial counsel's performance.

Accordingly, Petitioner has failed to demonstrate that the Appellate Division's conclusion that trial counsel was not ineffective (for failing to further pursue *Brady* material and investigate potential defenses) was contrary to, or an unreasonable application of, the *Strickland* standard, or that the decision was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

### 3.  Inadequate Advice and Plea Recommendation

As an initial matter, Petitioner's claim that trial counsel coerced him into pleading guilty is belied by his own statements before the trial court at his plea hearing and sentencing hearing.  Indeed, during the plea hearing, Petitioner expressly informed the trial court that he had sufficient time to discuss his case with his attorney, had not been coerced to enter a

guilty plea, and was satisfied with his attorney's handling of the case, *see* PT. at 12-13, and at the sentencing hearing, he expressly stated that he did not wish to withdraw his guilty plea and lose the sentencing offer, despite his pre-sentencing letter.  ST. at 2-6.  These statements carry a "strong presumption of veracity" and are generally treated as conclusive in the face of subsequent attempts to contradict them.  *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (quoting, *inter alia*, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977)); *United States v. Torres*, 129 F.3d 710, 716-17 (2d Cir. 1997) (district court properly rejected claims that guilty plea was involuntary because defense counsel coerced plea and plea was entered out of fear that defense counsel was unprepared to go to trial where such claims were contradicted by defendant's plea allocution); *Carpenter v. Unger*, 9:10-CV-1240 (GTS/TWD); 9:12-CV-0957 (GTS/TWD), 2014 WL 4105398, at *19 (N.D.N.Y. Aug. 20, 2014) (noting that in evaluating whether a plea was knowing and voluntary, a court may consider, "among other things, [petitioner's] allocution statements"); *see also Padilla v. Keane*, 331 F. Supp. 2d 209, 217 (S.D.N.Y. Aug. 19, 2004) ("Where . . . [petitioner] . . . has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on [petitioner's] sworn statements and hold him to them.").

Moreover, Petitioner has not provided any evidence regarding his discussions with trial counsel besides the self-serving statement in his 440 Motion that trial counsel advised him off-the-record during the plea hearing that the prosecution had yet to turn over *Brady* materials, but "it doesn't matter" because "your [sic] being offered a good deal" and should "just take it[.]"  SR 309-310.  In any event, discussions of this nature are neither inappropriate nor coercive.  *See United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001) ("[D]efense

counsel's blunt rendering of an honest but negative assessment of [petitioner's] chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea."); *Sylvester v. United States*, 369 Fed. App'x 216, 218 (2d Cir. 2010) ("The district court properly recognized that had the matter proceeded to trial and the Government chosen to call its confidential informant to testify that Sylvester sold him a firearm and was carrying a firearm during the drug sale-which the Government proffered it would have done-that testimony alone could form the basis of a conviction. Such is the law in this Circuit. . . . Thus, Sylvester's trial counsel did not err in providing him with advice to the same effect."); *see also Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Furthermore, as noted, the evidence in the record shows that in exchange for Petitioner's guilty plea, he received a sentence that was 6 ½ years less than the sentence he could have received if he were found guilty of the charges in only one of the two indictments, which further belies Petitioner's contention that trial counsel's advice was objectively unreasonable.

Because Petitioner has failed to establish that his trial counsel's alleged recommendation that he take the plea offer was constitutionally deficient, the Court need not reach the question of whether Petitioner was prejudiced by the advice he received.  However, for the sake of completeness, the Court once again notes that Petitioner has also failed to provide any credible explanation for why he believes he likely would have been acquitted at trial on all charges in both indictments, or received a more favorable sentence, had he not pled guilty.  Thus, Petitioner has also failed to show that he was prejudiced by trial counsel's

advice.

Based on the foregoing, Petitioner's ineffective assistance claim based on trial counsel's alleged discussions of considerations for pleading guilty is meritless.

### B.   Petitioner's Potential Defenses

In addition to claiming that his trial counsel was ineffective for failing to pursue entrapment, agency, and unlawful seizure defenses, Petitioner appears to claim that those defenses themselves provide a basis to vacate his conviction.  Insofar as the petition may be construed in this way, there are at least two problems with this argument.

First, Petitioner's guilty plea bars this Court from considering whether these defenses may provide a basis for vacating the conviction.  *See Horton v. Bell*, No. 9:21-CV-262 (GLS/ATB), 2023 WL 10727421, at *11 (N.D.N.Y. Mar. 30, 2023) (finding that claims related to the government's unlawful interrogation, alleged violation of *Brady* obligations, and improper controlled call were all barred by *Tollett*), *report and recommendation adopted by* 2024 WL 1341091 (N.D.N.Y. Mar. 29, 2024); *Padilla v. Bradt*, No. 13-CV-7908, 2015 WL 394090, at *8 (S.D.N.Y. Jan. 29, 2015) (holding defective indictment claims fall under the *Tollet* rule that a petitioner may only attack the voluntary and intelligent character of the plea); *Bridgefourth v. Artus*, 475 F. Supp. 2d 261, 269 (W.D.N.Y. 2007) (finding a *Miranda* allegation regarding conduct antecedent to the guilty plea is waived).[5]

Second, as discussed above, Petitioner's claims related to the viability of defenses

---

[5]  Petitioner acknowledged this bar during his plea hearing, when the trial court explained to him that he was waiving numerous rights by pleading guilty, including the rights to proceed to trial where he would be represented by his attorney, to confront and cross-examine witnesses, and to present any defenses to the charges, and Petitioner stated that he understood he was waiving those rights by pleading guilty.  PT. 9-12.


based on entrapment, agency, and unlawful search and seizure are all meritless.[6]

### C.    Petitioner's Challenge to His Sentence

Petitioner claims that the trial court's imposed sentence was harsh and excessive.

Pet. at 10.  Respondent avers that Petitioner's excessive sentence claim is not cognizable on

federal habeas review and, in any event, is meritless.  Resp. Mem. at 40-42.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the

sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383

(2d Cir. 1992) (citation omitted); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948)

("The sentence being within the limits set by the statute, its severity would not be grounds for

relief here even on direct review of the conviction, much less on review of the state court's

denial of habeas corpus."); *Grimes v. Lempke*, No. 9:10-CV-0068 (GLS/RFT), 2014 WL

1028863, at *3 (N.D.N.Y. Mar. 14, 2014) ("It is well settled that the issue of whether a

sentence was overly harsh or excessive is not a proper issue for review in the habeas

context unless the sentence was outside of the permissible range provided for by state law.")

(citing *White*, 969 F.2d at 1383).

Petitioner pled guilty to one count of criminal sale of a controlled substance in the third

degree and one count of criminal possession of a controlled substance in the third degree.

*See* PT. at 6-11.  Petitioner also acknowledged that he was a second felony offender during

his plea hearing.  *Id*. at 13-14.

Under New York law, criminal possession of a controlled substance in the third degree

---

[6]  For the reasons discussed in Respondent's Memorandum of Law in Opposition, Petitioner's claim that the charges in the Second Indictment were the product of an unlawful search and seizure are also barred from federal habeas review.  *See* Resp. Mem. at 36-40 (citing, *inter alia*, *Stone v. Powell*, 428 U.S. 465, 482 (1976) (holding that federal habeas relief is unavailable for a claim that evidence was recovered through an illegal search or seizure where, as here, the "State has provided an opportunity for full and fair litigation of a Fourth Amendment claim")).

and criminal sale of a controlled substance in the third degree are both class B felonies.  N.Y. Penal Law § 220.16; N.Y. Penal Law § 220.39.  Where a person is a second felony offender, the maximum term of an indeterminate sentence for a class B felony is between nine and twenty-five years.  *Id*. § 70.06(3)(b).

Petitioner was sentenced to a determinate term of 5½ years' imprisonment and 3 years of post-release supervision for third-degree criminal sale of a controlled substance, and the same determinate term for third-degree criminal possession of a controlled substance, with each sentence to run concurrent with the other.  ST. at 12-13.  Therefore, the sentences imposed by the trial court fall within the range proscribed by state law.   Accordingly, Petitioner's excessive sentence claim provides no grounds for federal habeas relief.  *See e.g., Rodriguez v. Griffin*, No. 9:16-CV-1037 (DNH), 2018 WL 6505808, at *24 (N.D.N.Y. Dec. 11, 2018) ("[Petitioner]'s . . . sentences . . . even if representing the maximum amount of time permissible . . . fall within the limits set by New York law and therefore petitioner's claim provides no grounds for federal habeas relief.").

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[7] and it is further

**ORDERED** that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: July 12, 2024
　　　Syracuse, NY

Glenn T. Suddaby
U.S. District Judge

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).